IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

    Plaintiff,

v.

ENEMENCIO C. LANSDOWN (01),

    Defendant.

Case No. 21-20009-01-DDC

## MEMORANDUM AND ORDER

A grand jury indicted Enemencio C. Lansdown on three federal charges in April 2021. Doc. 1. Mr. Lansdown since has filed, pro se,[1] something he titles, "Motion for Counter Request" (Doc. 2). In his motion, Mr. Lansdown requests that: (1) the court hold all court proceedings in the United States Courthouse in Wichita, Kansas; (2) the United States Marshals Service transport him to and from the El Dorado Correctional Facility to the Wichita federal courthouse for every court proceeding; (3) the court appoint him counsel for his federal case; and (4) the court extend permission for his appointed attorney to visit him at the El Dorado Correctional Facility. *See* Doc. 2. The government filed a Response (Doc. 4), arguing the Interstate Agreement on Detainers Act ("IADA") and 18 U.S.C. § 3163(j) do not support Mr. Lansdown's requests. Mr. Lansdown has not filed a reply and the time to do so has now passed.

---

[1]     Because Mr. Lansdown filed this motion pro se, the court construes his filings liberally and holds them to "a less stringent standard than formal pleadings drafted by lawyers." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). But the court does not become an advocate for the pro se party. *See id.* Mr. Lansdown's pro se status does not excuse him from complying with the court's rules or facing the consequences of noncompliance. *See Ogden v. San Juan Cnty.*, 32 F.3d 452, 455 (10th Cir. 1994).

For reasons explained below, the court denies Mr. Lansdown's Motion for Counter Request (Doc. 2).

## I. Background

On April 7, 2021, the federal government filed a three count Indictment against Mr. Lansdown. Doc. 1 at 3. The Indictment charges Mr. Lansdown with forcible assault of a federal officer, use of a firearm in furtherance of a crime of violence, and felon in possession of a firearm. *See id.* at 1–3. Mr. Lansdown is currently in Kansas state custody serving a sentence for voluntary manslaughter at the El Dorado Correctional Facility. *See* Doc. 4 at 2; *see* Lansdown, Enemencio Corman (KDOC# 0071961), *Kansas Adult Supervised Population Electronic Repository*, Kansas Department of Corrections, https://kdocrepository.doc.ks.gov/kasper/search/detail?kdocNumber=71961 (last visited July 9, 2021). After the grand jury returned the Indictment in his federal case, the United States Marshals Service filed a detainer on Mr. Lansdown under the Interstate Agreement on Detainers Act (IADA). Doc. 4 at 2. On April 26, 2021, El Dorado Correctional Facility staff served the Detainer on Mr. Lansdown. *Id.* The government represents that, when presented with the Detainer, Mr. Lansdown did not invoke his speedy trial rights. *See id.* (circling "(do not)" in the sentence "I (do) (do not) demand a speedy trial on the charges."). The government represents that Mr. Lansdown signed the Detainer and prison staff witnessed his signing. *Id.*

The court briefly recites the law and procedural rules governing the IADA and then addresses each of Mr. Lansdown's four requests.

## II. Legal Standard

"The Interstate Agreement on Detainers (IAD) is a compact entered into by 48 States, the United States, and the District of Columbia to establish procedures for resolution of one

2

State's outstanding charges against a prisoner of another State." *New York v. Hill*, 528 U.S. 110, 111 (2000). The State of Kansas is one of the 48 states. *See* Kan. Stat. Ann. § 22-4401; *see also Agreement on Detainers*, National Center for Interstate Compacts, https://apps.csg.org/ncic/Compact.aspx?id=1 (last visited July 6, 2021). The IADA prescribes uniform procedures for lodging and executing a detainer which imposes a "legal order that requires a State in which an individual is currently imprisoned to hold that individual . . . so that he may be tried by a different State for a different crime." *United States v. Pursley*, 474 F.3d 757, 761 (10th Cir. 2007) (quoting *Alabama v. Bozeman*, 533 U.S. 146, 148 (2001)).

The IADA's purpose is to "encourage the expeditious and orderly disposition of such charges and determination of the proper status of any and all detainers based on untried indictments, informations, and complaints." 18 U.S.C. App. 2 § 2, Art. I. The IADA "seeks to minimize the consequent interruption of the prisoner's ongoing prison term." *Bozeman*, 533 U.S. at 148.

The IADA applies once the "receiving state" lodges a detainer for a prisoner who is in custody of a "sending state." *United States v. Ray*, 899 F.3d 852, 857 (10th Cir. 2018) (text alteration and internal quotation marks omitted); 18 U.S.C. App. 2 § 2, Art. II(b)–(c). Under the IADA, the "receiving state" is the State who requests custody from the sending state to prosecute the prisoner on a separate indictment, information, or complaint. 18 U.S.C. App. 2 § 2, Art. II(b)–(c). For IADA purposes, the "federal government constitutes a state." *Ray*, 899 F.3d at 857 n.1 (internal quotation marks and text alteration omitted).

When a detainer is lodged against a prisoner, the warden or another prison official must "promptly inform [the prisoner] of the source and contents of any detainer lodged against him and shall also inform him of his right to make a request for final disposition" of the charges. 18

U.S.C. App. 2 § 2, Art. III(c); *United States v. McIntosh*, 514 F. App'x 776, 781 (10th Cir. 2013). If the prisoner requests a final disposition of the detainer—and provides "written notice of the place of his imprisonment and his request" to the prosecuting officer and appropriate court—then he "shall be brought to trial within one hundred and eighty days after[.]" 18 U.S.C. App. 2 § 2, Art. III(a). In sum, the IADA gives a prisoner "the right to demand a trial within 180 days" and "gives a State the right to obtain a prisoner for purposes of trial, in which case the State (a) must try the prisoner within 120 days of his arrival, and (b) must not return the prisoner to his 'original place of imprisonment' prior to that trial." *Bozeman*, 533 U.S. at 151 (interpreting the IADA).

The court now applies the IADA and governing legal standards to this case's facts and procedural elements to decide whether the court should grant Mr. Lansdown's motion.

### III. Discussion

Mr. Lansdown's motion argues that the court should grant his motion's four requests "as reasonable in light of the deadly" COVID-19 virus. Doc. 2 at 1. The government argues the IADA does not support Mr. Lansdown's requests because he has not invoked his speedy trial rights and remains in Kansas state custody. *See* Doc. 4. The court agrees with the government's position.

As already discussed, the federal government lodged a detainer against Mr. Lansdown and the Kansas Department of Correction's El Dorado Correctional Facility, where Mr. Lansdown is currently housed. Doc. 4 at 2. As part of the detainer, Mr. Lansdown signed a "Detainer on Defendant" which described his rights under the IADA. *Id.* But Mr. Lansdown did not assert his right to a speedy trial and did not "request a final disposition" on the charges. *Id.* Mr. Lansdown thus remains in the custody of the Kansas Department of Corrections and not in

4

the custody of the United States Marshals Service.  *See id.* at 3–4 ("Defendant will not be transferred to the custody of the United States (the USMS) at this time.").

Turning to the specific requests of Mr. Lansdown's motion, it *first* seeks an intra-district transfer of his pending case to the federal courthouse in Wichita.  Doc. 2 at 1.  Liberally construing Mr. Lansdown's motion, he seeks the transfer because of Wichita's proximity to El Dorado.  *See id.* (requesting the United States Marshals Service transport Mr. Lansdown from El Dorado Correctional Facility to court proceedings "each and every day").  Fed. R. Crim. P. 21 provides for intra-district transfer of a criminal proceeding based on prejudice or convenience.  Fed. R. Crim. P. 21(a)–(b).  But, because there are no proceedings scheduled or planned, there is no reason for the court to grant the transfer request at this time.  So, the court denies this portion of Mr. Lansdown's motion without prejudice.

*Second*, Mr. Lansdown requests that the United States Marshals Service transport him to and from the El Dorado Correctional Facility to the Wichita federal courthouse for every court proceeding in his federal criminal case.  Doc. 2 at 1.  But Mr. Lansdown is currently in state custody.  As the government explains, the IADA "prohibits [Mr. Lansdown] from being shuttled back and forth between federal and state custody during his federal prosecution[.]"  Doc. 4 at 6; *see also Bozeman*, 533 U.S. at 151 (explaining the receiving state "must not return the prisoner to his 'original place of imprisonment' prior to that trial").  The court agrees.  The IADA prohibits a receiving state—here, the United States—from returning an inmate to his original place of imprisonment before he is tried on the receiving state's indictment.  18 U.S.C. App. 2 § 2, Art. IV(e) (mandating that the court dismiss an indictment with prejudice if prisoner is not tried before sent back to original place of imprisonment).  So, the government is correct.  The United States Marshals Service cannot shuttle Mr. Lansdown between state and federal custody

because doing so would violate the IADA. Thus, the court denies Mr. Lansdown's second request.

*Third*, Mr. Lansdown asks the court to appoint him "a qualified attorney" for "representation in these matters." Doc. 2 at 1. Mr. Lansdown is not in federal custody and because Mr. Lansdown has not invoked his speedy trial rights, there are currently no scheduled federal court proceedings. At this time, the court declines to provide court appointed counsel since there are no planned federal proceedings. The court agrees with the government that Mr. Lansdown "will be transferred to the custody of the [United States Marshals Service] if and when he invokes his right to a speedy trial under Article III of the IADA, or if and when the United States elects to have [Mr. Lansdown] produced in order to proceed with the prosecution under Article IV of the IADA." Doc. 4 at 6. Once the United States Marshals Service receives Mr. Lansdown into federal custody, the court will appoint Mr. Lansdown counsel—if he is financially eligible—"to represent [him] at every stage of the proceeding from initial appearance through appeal[.]" Fed. R. Crim. P. 44(a). But at this stage in the proceedings, it is premature to make that decision. The court thus denies Mr. Lansdown's request for court appointed counsel without prejudice.

*Fourth*, Mr. Lansdown requests that appointed counsel "be permitted to visit [him] at the El Dorado Correctional Facility" before any court hearings. Doc. 2 at 1. But, as explained above, the court declines to appoint Mr. Lansdown counsel at this stage and that decision renders this portion of his motion moot. The court denies this request without prejudice.

If Mr. Lansdown decides to demand a speedy trial on the federal charges, then he may renew these requests. If Mr. Lansdown invokes his rights under the IADA, he "must be brought to trial on the federal charges within 180 days after he has caused to be delivered to the

6

prosecuting officer and the appropriate court a request for final disposition of the charges on which the detainer is based." *United States v. Washington*, 596 F.3d 777, 779 (10th Cir. 2010); *see* 18 U.S.C. App. 2 § 2 Art. II(a), III(a). If Mr. Lansdown asserts his right to a speedy trial and requests a final disposition of the pending federal charges, then Mr. Lansdown will be transferred to the United States Marshals Service. But until Mr. Lansdown asserts his right to a speedy trial and requests a final disposition of the federal charges brought against him, the court can't grant him any of the relief his current motion seeks.

**IV. Conclusion**

Mr. Lansdown makes four requests of this federal court in his motion. *See* Doc. 2. But Mr. Lansdown has not invoked his speedy trial rights, as described by the IADA, and currently is not in federal custody. The court thus denies Mr. Lansdown's motion without prejudice.

**IT IS THEREFORE ORDERED BY THE COURT THAT** Enemencio C. Lansdown's Motion for Counter Request (Doc. 2) is denied.

**IT IS SO ORDERED.**

**Dated this 14th day of July, 2021, at Kansas City, Kansas.**

                                                         **s/ Daniel D. Crabtree**
                                                       **Daniel D. Crabtree**
                                                       **United States District Judge**